UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW CONNOLLY and<br>GAVIN CAMPBELL BLACK,<br><br>*Defendants*. | No. 1:16-cr-00370 (CM)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

# DEFENDANTS' RESPONSE TO THE GOVERNMENT'S MEMORANDUM OF LAW CONCERNING THE BRITISH BANKERS' ASSOCIATION

**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Attorneys for Defendant Matthew Connolly*

**LEVINE LEE LLP**
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone: (212) 223-4400
Facsimile: (212) 223-4425

*Attorneys for Defendant Gavin Campbell Black*

# TABLE OF CONTENTS

**Page**

I. THE GOVERNMENT DOES NOT ADDRESS THE COURT'S CONCERN THAT THE BBA RULE DOES NOT CONTAIN THE STANDARD ALLEGED IN THE INDICTMENT .................................................................................................................. 1

II. THE GOVERNMENT MUST PROVE THAT DEFENDANTS ENGAGED IN A SCHEME TO DECEIVE THE BBA .................................................................................. 4

III. COMPLIANCE WITH THE LIBOR DEFINITION IS A COMPLETE DEFENSE TO THE ALLEGED SCHEME ................................................................................... 6

IV. THE GOVERNMENT MUST PROVE THAT THE ALLEGED FALSE STATEMENTS WERE MATERIAL TO THE BBA ........................................................ 7

V. THE COURT SHOULD REJECT THE GOVERNMENT'S ATTEMPT TO MINIMIZE THE FDIC'S PARTICULARS OF CLAIM ................................................... 8

    A. The FDIC Complaint Demonstrates that the Government Knows or Should Have Known that the BBA Knew that Submitting Banks Considered Their Derivatives Trading Positions .................................................................................. 10

    B. Internal BBA Documents and Other Evidence Also Demonstrate that the BBA Did Not Employ the Standard for LIBOR Submissions Alleged in the Indictment ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berger v. United States*,
   295 U.S. 78 (1935) .................................................................................................................. 12

*Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*,
   784 F. Supp. 2d 1142 (C.D. Cal. 2011) .................................................................................. 12

*Fasulo v. United States*,
   272 U.S. 620 (1926) .................................................................................................................. 3

*F.D.I.C. v. Johnson*,
   35 F. Supp. 3d 1286 (D. Nev. 2014) ....................................................................................... 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-02262 (NRB), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ............................... 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-02262 (NRB), 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ................................ 11

*In re Motivation Res., Inc.*,
   158 B.R. 184 (Bankr. C.D. Cal. 1993) .................................................................................... 12

*Napue v. Illinois*,
   360 U.S. 264 (1959) .................................................................................................................. 9

*Neder v. United States*,
   527 U.S. 1 (1999) ...................................................................................................................... 7

*United States v. Agurs*,
   427 U.S. 97 (1976) .................................................................................................................... 9

*United States v. Allen*,
   864 F.3d 63 (2d Cir. 2017) ............................................................................................. 2, 4, 15

*United States v. Autuori*,
   212 F.3d 105 (2d Cir. 2000) .................................................................................................. 4, 5

*United States v. Binday*,
   No. 12-cr-00152, 2013 WL 12154927 (S.D.N.Y. Sept. 16, 2013) ........................................ 3, 6

*United States v. D'Amato*,
   39 F.3d 1249 (2d Cir. 1994) ................................................................................................... 6, 7

*United States v. Gaudin*,
  515 U.S. 506 (1995) .................................................................................................... 7

*United States v. Greenberg*,
  835 F.3d 295 (2d Cir. 2016) .................................................................................... 5, 6

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
  822 F.3d 650 (2d Cir. 2016) ....................................................................................... 3

*United States v. Rutigliano*,
  790 F.3d 389 (2d Cir. 2015) .................................................................................... 6, 7

*United States v. Vozzella*,
  124 F.3d 389 (2d Cir. 1997) .................................................................................. 9, 10

*United States v. Wallach*,
  935 F.2d 445 (2d Cir. 1991) ....................................................................................... 9

*United States v. Weaver*,
  860 F.3d 90 (2d Cir. 2017) ......................................................................................... 8

*Universal Health Servs., Inc. v. United States*,
  136 S. Ct. 1989 (2016) ................................................................................................ 8

Defendants Matthew Connolly and Gavin Campbell Black ("Defendants") respectfully submit this memorandum of law in response to the Government's memorandum of law concerning the British Bankers' Association [ECF No. 159].[1]

## I. THE GOVERNMENT DOES NOT ADDRESS THE COURT'S CONCERN THAT THE BBA RULE DOES NOT CONTAIN THE STANDARD ALLEGED IN THE INDICTMENT

The Government fails to address the Court's concern that, because the British Bankers' Association's ("BBA") LIBOR rule does not contain the standard alleged in the Superseding Indictment ("Indictment" or "SI"), the Government will not be able to establish that the acts underlying the charged offenses were deceptive in the absence of a BBA witness. The only deceptive acts alleged in the Indictment are alleged affirmative misrepresentations contained in Deutsche Bank's LIBOR submissions. Specifically, the Indictment alleges that:

> [Deutsche Bank's] LIBOR submissions were "false and fraudulent" because they were not "unbiased and honest," in that they took into account considerations other than what the true cost would be for Deutsche Bank to borrow from other banks at some future date certain—most notably, the trading positions of the defendants and their coconspirators, which had the potential (assuming the Deutsche Bank submission was factored into any particular LIBOR) to "benefit their trading positions" at the expense of counterparties to those trades.

[ECF No. 145 ("Oct. 19 Decision") at 1-2.]

The Government, however, cannot establish that the LIBOR submissions were "false and fraudulent" without showing that they violated the BBA rules because, as alleged, the BBA both established and administered the rules governing LIBOR submissions. (*See, e.g.*, SI ¶ 1); [ECF No. 113 (Decl. of Seth L. Levine in Support of Defs.' Joint Am. Mot. to Dismiss the Superseding

---

[1] This memorandum addresses the discrete issues of whether the Government needs to call a witness to testify about the expectations of the BBA and the significance of the FDIC's Particulars of Claim. As such, it does not address all of the legal or evidentiary issues relating to the BBA rule, a number of which Defendants will address through pre-trial motions pursuant to a schedule to be set by the Court.

Indictment), Exs. A at 107 ("[T]he LIBOR definition was devised by the BBA, not a government agency, and the government never claimed otherwise.") & B at Statement of Facts ¶ 2.]

During the entirety of the period charged in the Indictment, the BBA required that a LIBOR submission consist solely of a numerical response "between two and five decimal places" to a single sentence query. (*See* SI ¶ 2); *see also United States v. Allen*, 864 F.3d 63, 70 (2d Cir. 2017). As the Court has noted, the BBA query did not include the "unbiased and honest" standard alleged in the Indictment or prohibit submitters from considering their bank's trading positions. (Oct. 19 Decision at 7.) The Court stated:

> The question submitters were asked to answer in their LIBOR submissions, however, says nothing about "unbiased and honest" estimates of borrowing costs; neither does the BBA's LIBOR definition during the period encompassed by the conspiracy. Someone is going to have to testify about the expectations of the BBA, or this case will be on precarious footing at the close of the Government's evidence.

(*Id.*) Accordingly, the Government cannot establish that Deutsche Bank's LIBOR submissions were false and fraudulent absent evidence of the BBA's expectations. Indeed, the Government acknowledged its burden in this regard at the November 30, 2017 status conference ("November 30 Conference"):

> MS. SIPPERLY: . . . We need to establish that there was a LIBOR definition, and that there was an expectation that certain submissions would have been made during that process.
>
> THE COURT: An expectation by whom?
>
> MS. SIPPERLY: The BBA.
>
> THE COURT: The BBA.
>
> MS. SIPPERLY: Yes.
>
> THE COURT: But apparently there was no such expectation.

(Nov. 30 Tr. at 37:5-13.)

2

The Government's Memorandum of Law provides no response to the Court's concern, as it offers no explanation as to how it will prove the falsity of any of Deutsche Bank's LIBOR submissions without the testimony of a BBA witness.[2] To the contrary, despite acknowledging its burden at the November 30 Conference, the Government continues to assert that it does not intend to offer evidence of the BBA's expectations. [*See* ECF No. 159 (Gov't Mem. of Law ("Gov't Br.")) at 7 ("[T]he United States does not need to call a witness from the BBA because its theory of prosecution is that the defendants intended to trick their counterparties, not the BBA.").] However, it is settled law that "freestanding 'bad faith' or intent to defraud without accompanying conduct is not actionable under the federal fraud statutes." *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 663 (2d Cir. 2016); *see also Fasulo v. United States*, 272 U.S. 620, 627-29 (1926) (a scheme is not one "to defraud" unless the alleged deprivation occurs by deceit); *see also United States v. Binday*, No. 12-cr-00152, 2013 WL 12154927, at * 1 (S.D.N.Y. Sept. 16, 2013) ("Obviously, if the Insurers were not deceived, they could not have been victims of a scheme to defraud."). The Government cannot establish the requisite standard under the federal fraud statutes absent evidence of the BBA's expectations regarding LIBOR.

The Government also wrongly suggests in a footnote that it will be able to establish that the LIBOR submissions were false statements of opinion because they took into account Deutsche Bank's derivatives trading positions. (Gov't Br. at 5 n.3.) However, the only potential opinion ***expressed*** in a LIBOR submission was an answer to the BBA's query, which asked only

---

[2] Indeed, Deutsche Bank's LIBOR submissions could not have been "false" under the Indictment's allegations because the BBA did not adopt a rule prohibiting submitters from considering their trading positions until 2013—two years after the end of the alleged conspiracy. [*See* ECF No. 112 (Defs.' Mem. in Support of Am. Mot. to Dismiss) at 7-8.]

for the rate at which a Panel Bank "could borrow funds," *Allen*, 864 F.3d at 70, and "says nothing" about the Government's "unbiased and honest" standard (Oct. 19 Decision at 7).  (*See also* Gov't Br. at 5 n.3 (quoting *United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000) ("'The ***expression*** of an opinion not honestly entertained is a factual misrepresentation.'")) (emphasis added) (additional citation omitted).)  The Government's argument in this regard is also precluded by the Second Circuit's decision in *Allen*, which observed that "'LIBOR submissions were necessarily imprecise even when there was decent market information, such that, at any given time, there existed a "range" of reasonable LIBOR submissions.'"  (Oct. 19 Decision at 7 (quoting *Allen*, 864 F.3d at 75).)

## II. THE GOVERNMENT MUST PROVE THAT DEFENDANTS ENGAGED IN A SCHEME TO DECEIVE THE BBA

Contrary to the Government's assertions in its Memorandum of Law, the Indictment's allegations do not support a theory of fraud predicated on the deception of the alleged counterparty victims.  Rather, because the only deceptive acts alleged in the Indictment—Deutsche Bank's "false and fraudulent LIBOR submissions"—were directed at the BBA and ***not*** at the counterparties, the Government must prove that Defendants engaged in a scheme to deceive the BBA.  Notwithstanding that the Government requested the opportunity to submit additional briefing on this precise issue, nothing in the Government's Memorandum of Law disputes this fact.

The Court has twice recognized that the Indictment alleges a scheme based on the alleged deception of the BBA.  In its recent Decision and Order on Defendants' Pretrial Motions, the Court found that the Indictment alleges:

> [A] scheme to obtain money by false pretenses from various financial institutions (Banks A-D) by making biased and dishonest submissions (false statements) to the BBA (a third party, not the alleged victim), with the intention that those submissions would be used in setting USD LIBORs across various tenors (time

> periods) in ways that would cause the victim banks to be (or risk being) the losing parties in the various derivatives trades . . . .

(Oct. 19 Decision at 5.)  The Court similarly stated in its Decision and Order Granting in Part Defendants' Motion for a Bill of Particulars that:

> The false statements specified in the Indictment were not made to the victims of the fraud; rather, they were made to the BBA, which unwittingly utilized those false statements to set various LIBOR benchmark rates in ways that allegedly favored DB's position in various derivatives trades, thereby causing losses to various third parties.

[ECF No. 89 (the "May 24 Decision") at 4.]

In its Memorandum of Law, the Government acknowledges that the Indictment alleges a non-convergent fraud scheme by which Defendants allegedly made false statements to one party (the BBA) for the purpose of obtaining money and property from another (the counterparties). (*See* Gov't Br. at 3 (citing *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016)).)  As such, the Government must establish the scheme was to deceive the BBA.  *Greenberg*, 835 F.3d at 306 (holding that "wire fraud does not require convergence between the parties intended to be deceived and those whose property is sought in a fraudulent scheme.").

While *Greenberg* held that the wire fraud statute does not require convergence, it did not consequently eliminate the requirement of proof of deception to establish a scheme to defraud. *Id.*; s*ee also, e.g.*, *Autuori*, 212 F.3d at 115 (a "scheme to defraud" is a "plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'") (citations omitted).  To the contrary, as the Government recognized in its appellate brief in *Allen*:  "The touchstone of fraud is 'deception.'  The 'gist' of the offense is 'fraudulently producing a false impression upon the mind of the other party.'"  *Allen*, No. 16-898 [ECF No. 53 ("Gov't App. Br.") at 45-46] (citations omitted) (internal quotation marks omitted).  Here, the only deceptive acts alleged in the Indictment, *i.e.*, the allegedly false LIBOR submissions, were made to the BBA and not to

the Deutsche Bank counterparties. Therefore, the Government must still establish that the submissions were designed to deceive the BBA in order to deprive the intended counterparty victims of money or property. *See Greenberg*, 835 F.3d at 306. Accordingly, absent evidence that Defendants engaged in a scheme to deceive the BBA, the Government cannot meet its burden at trial.

### III. COMPLIANCE WITH THE LIBOR DEFINITION IS A COMPLETE DEFENSE TO THE ALLEGED SCHEME

There is no merit to the Government's assertion that "it does not matter whether or not the BBA approved of or acquiesced to the scheme." (Gov't Br. at 5.) In fact, the Second Circuit rejected a similar argument in *United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994), a case cited by the Government. In *D'Amato*, the Second Circuit held that a lobbyist hired by a corporation's vice president "cannot be found to intend to harm [that] corporation . . . through otherwise lawful misleading conduct if he . . . follow[ed] the instructions of an appropriate corporate agent who appears to be unconflicted and acting in good faith." *Id.* at 1258. Because the corporate employee who received the defendant's alleged misrepresentations understood the nature of the information being provided and believed that information to be consistent with his instructions, the Government could not prove that the defendant acted with an intent to deceive. *Id.* at 1259-60. Indeed, in *Binday*, this Court characterized *D'Amato* as standing for the proposition that there is "insufficient evidence of intent to defraud where corporate employees [of the allegedly defrauded party] were aware of and authorized the defendant's misrepresentations." *Binday*, 2013 WL 12154927, at *1 (citing *D'Amato*, 39 F.3d at 1259-60).

The *dicta* from *United States v. Rutigliano*, 790 F.3d 389 (2d Cir. 2015) on which the Government relies does not address the sufficiency of the evidence, or the elements of a wire fraud conviction. (*See* Gov't Br. at 6.) Rather, it refers to the district court's refusal to provide

an instruction to the jury on the meaning of "occupational disability" that went beyond the applicable published regulatory definition. *Rutigliano*, 790 F.3d at 402. Because, *inter alia*, the *Rutigliano* defendant could not demonstrate that the requested instruction accurately represented the law in every respect, his appeal was denied. *Id.*

Here, unlike *Rutigliano*, there is no applicable federal regulation defining LIBOR. The only applicable "rule" is the BBA's published LIBOR definition. Further, the party charged with interpreting and administering this rule is the BBA—the same party that created it. As a result, the Government does not have a good faith basis to suggest that Defendants were not entitled to rely on the BBA LIBOR definition, and pursuant to *D'Amato*, Deutsche Bank's compliance with this rule, as administered and applied by the BBA, is a complete defense to the alleged scheme. *See D'Amato*, 39 F.3d at 1258.

### IV. THE GOVERNMENT MUST PROVE THAT THE ALLEGED FALSE STATEMENTS WERE MATERIAL TO THE BBA

The Government's argument that the BBA does not matter, which it has now made in multiple briefs, is also contrary to the Supreme Court's decision in *Neder v. United States*, 527 U.S. 1 (1999). In *Neder*, the Supreme Court held that materiality is a requisite element of a "scheme or artifice to defraud" under the federal mail fraud, wire fraud and bank fraud statutes, *id.* at 20, 25, and defined the test for materiality as whether the alleged false statement has "'a natural tendency to influence, or [is] capable of influencing, ***the decision of the decisionmaking body to which it was addressed***.'" *Id.* at 16 (alteration in original) (emphasis added) (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)). In reaching that decision, the Court specifically rejected the Government's contention that "criminal liability would exist so long as the defendant *intended* to deceive the victim, even if the particular means chosen turn out to be immaterial, *i.e.*, incapable of influencing the intended victim." *Id.* at 24 (emphasis in original).

When evaluating whether or not a misrepresentation is material, one must "look[] to the effect on the likely or actual behavior of the ***recipient*** of the alleged misrepresentation." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (emphasis added) (citing *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016)).  Significantly, in a non-convergent fraud case, the Government argued in an appellate brief that materiality should be assessed not from the perspective of the victim, but from the third-party recipient of the statements: "[l]ooking at the materiality of a defendant's third-party misrepresentations from the viewpoint of anyone other than the third party is ***improper***."  Brief of Plaintiff-Appellee, *United States v. Weimert*, No. 15-2453, 2015 WL 7686893, at *31 (7th Cir. Nov. 23, 2015) (emphasis added); *see also id.* at *30 ("Materiality is always assessed based on the capability of influencing the recipient of the misrepresentation.").

Here, given that the alleged misrepresentations were made only to the BBA (*see, e.g.*, Oct. 19 Decision at 5; May 24 Decision at 4), the Government must prove that the alleged misrepresentations were material to the BBA.  As a result, the evidence proffered by the Government concerning the expectations of Deutsche Bank's counterparties and what would have been important to their decision making is irrelevant, and Defendants will seek to exclude such evidence at trial.  (*See* Gov't Br. at 7.)

V. **THE COURT SHOULD REJECT THE GOVERNMENT'S ATTEMPT TO MINIMIZE THE FDIC'S PARTICULARS OF CLAIM**

The Government wrongly claims that the FDIC's Particulars of Claim filed in the United Kingdom, FL-2017-000002 ("FDIC Complaint") does not have any significance in this action. To the contrary, based on the FDIC Complaint and other corroborating evidence,[3] the

---

[3] In addition, Defendants continue to believe that the Government is in possession of substantial additional evidence that demonstrates that the BBA was not deceived.

8

Government does not have a good faith basis for suggesting that LIBOR submitters' consideration of their banks' derivatives trading positions was not known to and accepted by the BBA as a common practice. Defendants will therefore move to preclude the Government from offering any testimony or other evidence or arguments suggesting that the BBA lacked knowledge of or did not accept this practice under principles of due process.

"The fundamental unfairness of a conviction obtained through the use of false evidence has long been recognized by the Supreme Court." *United States v. Vozzella*, 124 F.3d 389, 392 (2d Cir. 1997) (collecting cases). As such, the Due Process Clause prohibits the Government from obtaining a conviction based on the introduction of false or misleading evidence. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Vozzella*, 124 F.3d at 392-93. The due process protection applies both to the Government's knowing introduction of false evidence and its failure to take action to correct false evidence of which it is aware that has otherwise been introduced in a criminal case. As the Supreme Court has stated:

> [I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.

*Napue*, 360 U.S. at 269 (internal citations omitted).

Moreover, the Government is not required to have actual knowledge of the evidence's falsity to violate due process. Rather, due process also prohibits the Government from introducing evidence that it "should have known" was false. *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *Vozzella*, 124 F.3d at 393. When the Government is on notice that certain evidence may be false, as is the case here, the Government must proceed with "great caution" and cannot consciously avoid determining the falsity of such evidence. *United States v. Wallach*, 935 F.2d 445, 457 (2d Cir. 1991) (finding a due process violation where the government

9

consciously avoided confirming that its witness committed perjury); *see also Vozzella*, 124 F.3d at 392-93 (reversing a conviction based on misleading testimony concerning records that the government, but for its willful ignorance, should have known were false).

> **A.** ***The FDIC Complaint Demonstrates that the Government Knows or Should Have Known that the BBA Knew that Submitting Banks Considered Their Derivatives Trading Positions***

Contrary to the Government's assertion, the FDIC Complaint alleges that the BBA was specifically aware of and accepted, *inter alia*, the practice of Panel Banks taking their trading positions into account when making their LIBOR submissions. (*See, e.g.*, Declaration of Seth L. Levine in Support of Defendants' Response to Gov't Br. ("Levine Decl.") Ex. A at 43-44 ¶ 74(1).) The FDIC Complaint alleges that:

> At a meeting between Bank of England officials and Mr Ewan [the BBA LIBOR Manager], Mr Ewan reported that there was a market consensus that USD LIBOR was being set at three to four basis points above the actual market rate. He described this as a "*construct of the market as it is in <u>the interests of the banks</u> to have a higher LIBOR . . . .*"

(*Id.* at 43-44 ¶ 74(1)(c) (emphasis in original).) The FDIC Complaint further alleges that the BBA "directed" and "facilitated" the type of conduct alleged in the Indictment, using numerous post-2007 materials directly from the BBA that Defendants have repeatedly requested. (*Id.* at 5 ¶ 3(9), 7-9 ¶¶ 3(11)(a)-(f), 48-50 ¶¶ 74(11)-(20).) Even though Defendants referred to and attached excerpts of the FDIC Complaint to their Reply Memorandum of Law in Further Support of their Amended Motion to Compel [ECF Nos. 137 at 4 & 138-1], the Government feigned ignorance at the November 30 Conference and has consciously avoided learning the truth.

> 1. *The Government's Claim that It Was Not Aware of the FDIC's Allegations Is Not Credible*

The Government's claim that it was not aware of the FDIC's allegations is not credible. Prior to commencing litigation in the United Kingdom, the FDIC, as well as the Federal National

Mortgage Associate ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") and numerous other parties, brought LIBOR-related litigation against the BBA and Panel Banks in the United States, which was consolidated into a multi-district litigation in this Court before the Hon. Naomi Reice Buchwald. *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-02262 (NRB). These lawsuits alleged, among other things, that the BBA was aware that Panel Bank LIBOR submissions did not reflect good-faith estimates of a bank's cost of borrowing. (*See* Levine Decl. Exs. B (FDIC) ¶¶ 1-2, 240-41, 244-48, Ex. C (Fannie Mae) ¶¶ 4, 26, 78, 162-63 & Ex. D (Freddie Mac) ¶¶ 1-2, 101, 166-67.)[4]



### 2. *The Government Consciously Avoided Determining the Truth of the Allegations in the FDIC Complaint*

The Government's Memorandum of Law makes clear that it took no steps to investigate the fact that another government entity has obtained evidence that the BBA had knowledge that submitting banks considered their trading positions in making their LIBOR submissions, despite

---

[4] The BBA was dismissed from these actions on the bases that the Court lacked personal jurisdiction over it and plaintiffs failed to state a claim against it. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-02262 (NRB), 2015 WL 6243526, at *13, *38 (S.D.N.Y. Oct. 20, 2015); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-02262 (NRB), 2015 WL 6696407, at *9 (S.D.N.Y. Nov. 3, 2015).

11

requesting more time from the Court to look into these issues. The Government does not appear to have interviewed or obtained documents from anyone at the FDIC, suggesting that the Court should conclude that it has no obligation to do so based on its claim that the FDIC in its receivership capacity ("FDIC-R") is not a governmental entity. (*See* Gov't Br. at 8-9.) The Government is wrong.

As an initial matter, the prosecutors were duty bound to investigate the truth of the FDIC's allegations regardless of whether it was a governmental entity. *See, e.g.*, *Berger v. United States*, 295 U.S. 78, 88 (1935) (stating that the prosecutor's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done" and that "while [a prosecutor] may strike hard blows, he [or she] is not at liberty to strike foul ones."). In any event, the cases cited by the Government refute its argument that FDIC-R is not a governmental actor because they reflect that the FDIC claims the benefit of sovereign immunity even in its receivership capacity. *See Deutsche Bank Nat'l Trust Co. v. F.D.I.C*, 784 F. Supp. 2d 1142, 1163-65 (C.D. Cal. 2011) (granting the FDIC-R's motion, in part, to dismiss plaintiff's breach of fiduciary duty claim under the Federal Tort Claims Act ("FTCA") because the FTCA prevented plaintiff from filing such claim against a governmental agency and required that it bring any such claim against the United States); *F.D.I.C. v. Johnson*, 35 F. Supp. 3d 1286, 1295-98 (D. Nev. 2014) (rejecting the FDIC-R's argument that the FTCA barred the defendant's affirmative defense on grounds that the FTCA's discretionary function exception applied only to claims and not defenses, but noting that other courts have reached the opposition conclusion); *see also, e.g.*, *In re Motivation Res., Inc.*, 158 B.R. 184, 187 (Bankr. C.D. Cal. 1993) ("The FDIC, in either of its capacities, is at the very least an instrumentality of the federal government.").

Moreover, the FDIC Complaint's "lowballing" allegations further refute the Government's argument that the BBA rules required LIBOR submissions to be "unbiased and honest" as those terms are used by the Government. (*See* Gov't Br. at 8 n.4 (asserting that the FDIC Complaint "centers almost entirely on low-balling" without acknowledging the allegations that the BBA had knowledge of and accepted the practice charged in the Indictment).) As alleged in the FDIC Complaint, "lowballing" referred to "the practice of making artificially low USD LIBOR submissions that did not reflect the relevant Bank Defendant's honestly perceived cost of obtaining funds. . . ." (Levine Decl. Ex. A at 5 ¶ 3(7).) Thus, the BBA's knowledge and acceptance of the practice of "lowballing" is inconsistent with the Government's theory here.

### B. *Internal BBA Documents and Other Evidence Also Demonstrate that the BBA Did Not Employ the Standard for LIBOR Submissions Alleged in the Indictment*

As Defendants demonstrated in a prior motion, various internal BBA documents and other evidence demonstrate that the BBA knew that submitting banks took into account their trading positions. [*See* ECF No. 117 (Defs'. Mem. in Support of Am. Mot. to Compel ("Defs.' Mot. to Compel")) at 9-12.] Defendants previously attached to their Motion to Compel a series of internal notes and memoranda evidencing the BBA's knowledge in this regard. In opposing Defendants' Motion to Compel, the Government claimed that it did not possess these materials, and that, in any event, they are not relevant. [ECF No. 130 (Gov't Resp. to Defs' Mot. to Compel) at 7-12.] This position is not tenable. As the Court stated:

> [T]here is apparently evidence that the British Banking Association, which is solely responsible for the setting of LIBOR, was aware that, as early as 2005, its submitter banks took institutional interests (such as derivatives positions) into account. Not only did it do nothing to stop the practice, it accepted the practice as common:
>
>> Some companies will quote rates to suit their current position. It has always been the way . . . [There was] a consensus amongst banks that Sterling LIBOR and US Dollar are being set 3 - 4 basis points above the true cash rate. . . . Those banks whose main

13

>business is in derivatives or loans are perfectly happy with this, as it is to their advantage.

(Oct. 19 Decision at 26 (citation omitted) (alterations in block quote in original).)  It does not appear that the Government has taken any steps to investigate the exculpatory evidence contained in the BBA materials, including by interviewing relevant witnesses from the BBA.

In addition to the internal BBA documents, there exists substantial additional evidence that demonstrates the BBA did not require LIBOR submissions to be "honest and unbiased" as those terms are used by the Government.  For example, materials obtained by Defendants reflect that the Bank of England—the United Kingdom's Central Bank—was advised by the BBA that Panel Banks were incorporating their trading positions into their LIBOR submissions.  (*See, e.g.*, Defs.' Mot. to Compel at 10-11.)  Based on publicly-available information and materials produced by the Government, Defendants believe that the Government has additional materials in its possession demonstrating that the Bank of England encouraged Panel Banks to deviate from actual borrowing costs in making their LIBOR submissions.  (*See id*. at 14-16.)  Moreover, Defendants also understand, based on publicly-available materials and documents produced by the Government, that the Federal Reserve was aware as early as 2007 that LIBOR did not correspond with actual borrowing rates and communicated with the Bank of England about the accuracy of LIBOR as early as 2008.  (Levine Decl. Exs. F at 7 & G.)[5]  Finally, the Second Circuit commented on this substantial universe of publicly-available information, noting that "'[p]roblems with LIBOR were noted at least as early as a decade ago,'" by both "'regulators

---

[5]  At the Court's request, Defendants will submit additional briefing outlining the robust public record—well beyond the FDIC's allegations—of findings and conclusions by numerous governmental and regulatory agencies that demonstrates any claim that the BBA was deceived is false and misleading.

14

and market observers'" and were also "'publicly reported.'" *Allen*, 864 F.3d at 67 n.1 (citation omitted).

Accordingly, the Government does not have a good-faith basis for suggesting that the BBA employed an "unbiased and honest" estimate standard or did not accept LIBOR submitters' consideration of their banks' derivatives trading positions as a common practice.

Dated: New York, New York
       January 8, 2018

                                                          Respectfully Submitted:

By: S/ Kenneth M. Breen                          By: S/ Seth L. Levine
    (electronic signature with permission)           Seth L. Levine
    Kenneth M. Breen                                 Scott B. Klugman
    John P. Nowak                                    Miriam L. Alinikoff
    Phara A. Guberman
    Amanda L. Pober
**PAUL HASTINGS LLP**                            **LEVINE LEE LLP**
200 Park Avenue                                  650 Fifth Avenue, 13th Floor
New York, New York 10166                         New York, New York 10019
Telephone: (212) 318-6000                        Telephone: (212) 223-4400
Facsimile: (212) 319-4090                        Facsimile: (212) 223-4425
kennethbreen@paulhastings.com                    slevine@levinelee.com
johnnowak@paulhastings.com                       sklugman@levinelee.com
pharaguberman@paulhastings.com                   malinikoff@levinelee.com
amandapober@paulhastings.com

*Attorneys for Defendant Matthew Connolly*       *Attorneys for Defendant Gavin Campbell Black*