UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— )
                                                             )
UNITED STATES OF AMERICA        )
                                                             )
              *v.*                                          )
                                                             )        16-cr-370 (CM)
MATTHEW CONNOLLY AND            )
GAVIN BLACK,                               )
                                                             )
              *Defendants*.                       )
———————————————————— )

## UNITED STATES' MOTION TO EXCLUDE CERTAIN PORTIONS OF DEFENDANTS' PROPOSED EXPERT TESTIMONY

# TABLE OF CONTENTS

I.     Introduction ................................................................................................................. 1

II.    Expert Testimony Regarding Parties' Discovery, Establishment of the Conspiracy, and Net Benefit or Harm to Counterparties Is Improper on Its Face and Should Be Excluded 2

     A.    Dr. Arnold's Views as to the Adequacy of the Government's Discovery Are Improper Expert Testimony, Irrelevant, and Would Serve No Purpose Apart from Confusing the Jury ............................................................................................... 2

     B.    Testimony as to the Alleged Conspiracy Not Being Established Would Usurp the Fact-Finding Role of the Jury and Misstate the Law ............................................... 3

     C.    Testimony that Deutsche Bank's Counterparties May Have Net Benefitted or Were Not Positioned to Be Harmed Would Mislead and Confuse the Jury ........... 4

III.   Because Defendants Refuse to Disclose the Required Bases and Reasons for Their Experts' Opinions, the Proposed Testimony Should Be Excluded .................................... 6

IV.   Expert Testimony Regarding "Economic Reasonability"/"Reasonable Range" and Whether Mr. Black's Position Stood to Benefit Are Problematic and Underscore the Need for Further Disclosures ............................................................................................ 11

     A.    Expert Testimony Regarding the "Economic Reasonability" of LIBOR Submissions Could Mislead the Jury by Incorrectly Suggesting They Must Find Submissions Were Unreasonable ........................................................................ 12

     B.    Expert Testimony that Mr. Black's Trading Books Were Not Positioned to Have Benefitted Could Mislead the Jury by Incorrectly Suggesting They Must Find Defendants Were Positioned to Benefit from the Fraud ...................................... 13

V.    Conclusion ................................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................ 2, 10, 11, 15

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) ................................................................. 4

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y 2004) ....................... 4

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ......................................... 11, 15

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ............................................. 3

*United States v. Binday*, 804 F.3d 558 (2d Cir. 2015) ............................................. 5, 12

*United States v. Concessi*, 38 Fed. Appx. 866 (4th Cir. 2002) ...................................... 7

*United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994) ......................................... 5, 14

*United States v. Dula*, 39 F.3d 591 (5th Cir. 1994) .................................................... 13

*United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017) ................................................. 12

*United States v. Jasper*, 2003 WL 223212 (S.D.N.Y. Jan. 31, 2003) ........................... 7

*United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015) ............................................. 5, 13

*United States v. Mahaffy*, 2007 WL 1213738 (E.D.N.Y. Apr. 24, 2007) ...................... 7

*United States v. Manton*, 107 F.2d 834 (2d Cir. 1939) ............................................... 12

*United States v. Md. & Va. Milk Producers Co-op. Ass'n, Inc.*, 1992 WL 224928 (4th Cir. Sept. 15, 1992) ..................................................................................................................... 13

*United States v. Novak*, 443 F.3d 150 (2d Cir. 2006) ................................................... 5

*United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006) .................................................. 14

*United States v. Vest*, 116 F.3d 1179 (7th Cir. 1997) .................................................. 13

*United States v. Wilson*, 493 F. Supp. 2d 484 (E.D.N.Y. 2006) ................................... 7

**Rules**

Federal Rule of Criminal Procedure 16 ................................................................... passim

Federal Rule of Evidence 401 .................................................................................. 1, 3, 5

Federal Rule of Evidence 403 ............................................................................... 1, 3, 4, 5

Federal Rule of Evidence 702 ............................................................................... 1, 3, 4, 6

Federal Rule of Evidence 703 ......................................................................................... 6

Federal Rule of Evidence 705 ......................................................................................... 6

**Other Authorities**

Federal Rule of Criminal Procedure 16, Advisory Committee Notes, 1993 Amendment ......... 6, 7

The government moves to preclude Defendants' proposed expert testimony or, in the alternative, to compel Defendants to provide the "bases and reasons" for such testimony as required by Federal Rule of Criminal Procedure 16(b)(1)(C).  The government also moves to exclude or limit certain proposed expert testimony regardless of any further disclosure of its bases, pursuant to Federal Rules of Evidence 702, 401, and 403.

## I.   <u>Introduction</u>

On August 17, 2018, Defendants Matthew Connolly and Gavin Black filed three expert notices, purporting to comply with Rule 16(b)(1)(C), for Matthew Evans, Dr. Jonathan Arnold, and Christopher Rooke.  (*See* ECF Nos. 287, 288, and 289.)  The notices contain brief bullet points describing the testimony Defendants intend to offer through each expert, which falls into three (non-mutually exclusive) categories.

The first category is testimony that is incurably improper.  Specifically, Defendants intend to introduce expert testimony that (a) the "Government *failed to provide discovery*," (b) the "totality of the trading positions held by Deutsche Bank traders and/or counterparties . . . *does not establish the alleged conspiracy*," and (c) Deutsche Bank's counterparties may have benefitted or may not have been harmed by LIBOR manipulation.  (ECF Nos. 287 at 3, 288 at 3-4 (emphasis added).)  Such testimony would be irrelevant, mislead and confuse jurors as to the necessary elements of the charged offenses, and invade the respective roles of the jury and the Court.  It should therefore be excluded.

In the second category is data-driven testimony that, while summarized in bullet-point lists, should be excluded because it is unaccompanied by adequate "bases and reasons" as required by Rule 16(b)(1)(C).  Unlike the government's expert—who will provide the jury with a high-level tutorial on LIBOR and interest-rate derivatives trades that touches only on very basic

arithmetic—the expert testimony proffered by Defendants would rely heavily on data analytics which, in spite of the government's request, Defendants have refused to disclose or even to preview.  Without knowing the bases and reasons for the opinions Defendants' experts intend to offer, the Court will be unable to perform its "gatekeeping role" of determining the admissibility of expert testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), and the government will not be able to adequately prepare for cross-examination.  Given Defendants' refusal to comply with Rule 16(b)(1)(C), all three experts should be barred from testifying about data analysis and related opinions.  In the alternative, Defendants should be required to provide adequate "bases and reasons" with sufficient time for the government to raise any challenges and to prepare for trial.

Finally, in the third category is testimony that—if supported in advance by adequate bases and reasons—is nevertheless problematic.  For such testimony, relating to the so-called "economic reasonableness"/"reasonable range" arguments and to whether Mr. Black's position stood to benefit, the government may move to preclude after any allowed Rule 16(b)(1)(C) disclosure or at trial if it appears the testimony is improper.[1]

## II.   Expert Testimony Regarding Parties' Discovery, Establishment of the Conspiracy, and Net Benefit or Harm to Counterparties Is Improper on Its Face and Should Be Excluded

### A.   Dr. Arnold's Views as to the Adequacy of the Government's Discovery Are Improper Expert Testimony, Irrelevant, and Would Serve No Purpose Apart from Confusing the Jury

Defendant Black intends to offer Dr. Arnold's expert testimony that "the Government *failed to provide discovery*, including data that substantiates the alleged theory of manipulation."

---

[1] Given the deficiencies in Defendants' disclosures, it is difficult to discern all areas of their proposed expert testimony that may be improper.  The government may thus move to preclude additional testimony should Defendants be permitted to supplement their disclosures.

(ECF No 288 at 3 (emphasis added).)  Testimony relating to any alleged "failure" by the government to provide something in discovery is wholly irrelevant and an attempt to unfairly prejudice the government in front of the jury.[2]  Such testimony goes far beyond the scope of permissible expert opinion, which may be allowed to the extent it will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Dr. Arnold's proposed testimony would do neither, as any purported deficiencies in a party's discovery are not at issue and not a proper subject for the jury's consideration.  Instead, the proposed testimony would confuse and distract jurors, suggesting the government was somehow required to produce data beyond what it already has, or that this should impact the jury's verdict.  Defendants cannot remedy the inherently inappropriate nature of this testimony by any further disclosure.  The Court should exclude it under Federal Rules of Evidence 702, 401, and 403.

###    B.    Testimony as to the Alleged Conspiracy Not Being Established Would Usurp the Fact-Finding Role of the Jury and Misstate the Law

Defendant Black also intends to offer Dr. Arnold's testimony that "[t]he totality of the trading positions held by Deutsche Bank traders and/or counterparties throughout the Relevant Time Period *does not establish the alleged conspiracy*."  (ECF No. 288 at 4 (emphasis added).)  But conclusions as to whether or not a conspiracy has been established is entirely within the province of the Court and the jury.  Such testimony would thus violate the well-established rule that an expert may not instruct the jury on the law or suggest how the jury should apply the law to the facts or what result it should reach.  *See, e.g.*, *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) ("expert testimony that usurps either the role of the trial judge in instructing

---

[2] Defense counsels' attempt to bring discovery issues before the jury is another chapter in their continuing campaign of meritless allegations that the government has failed to meet its obligations under Rule 16, *Brady*, *Giglio*, and Jencks—allegations the Court has already rejected multiple times.

the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury in making a decision" as Federal Rule of Evidence 702 requires, and improperly "undertakes to tell the jury what result to reach" and "attempts to substitute the expert's judgment for the jury's") (internal citation and quotations omitted); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y 2004) (while an expert "may give an opinion to help the jury decide an issue in the case, he or she may not tell the jury what result to reach, or communicate 'a legal standard—explicit or implicit—to the jury'") (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)).

Here, Dr. Arnold's testimony that the alleged conspiracy has not been established would improperly suggest what result the jury should reach; namely, that the Defendants are not guilty on the conspiracy charge.  At the very least, such testimony would misconstrue the law by wrongly suggesting to the jury that the "totality of the trading positions" is required to establish the conspiracy, or even that the "totality of the trading positions" is necessarily relevant.  Of course, neither is true.  Given its high potential to usurp the jury's fact-finding role and confuse the jury as to the evidence required to find a conspiracy, Dr. Arnold's proposed testimony should be excluded under Federal Rules of Evidence 702 and 403.

###   C.   Testimony that Deutsche Bank's Counterparties May Have Net Benefitted or Were Not Positioned to Be Harmed Would Mislead and Confuse the Jury

Defendants intend to offer Mr. Evans' opinion that "counterparties may have net benefitted from the LIBOR setting" on dates identified in the Superseding Indictment (ECF No. 287 at 3), and conversely, Dr. Arnold's opinion that "data . . . does not establish that Deutsche Bank counterparties were positioned to be harmed" by Deutsche Bank's USD LIBOR submissions (ECF No. 288 at 4).  Such testimony would mislead and confuse the jury about the applicable law by suggesting a "no harm, no foul" defense, which is not viable under settled

Second Circuit law.  Because fraudulent intent is the essence of a "scheme to defraud," wire fraud does not require the government to prove the scheme was successful or that it caused any actual harm.  *See, e.g.*, *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) (while defendants must have contemplated some harm or injury to their victims, "[i]t is not required that the victims of the scheme in fact suffered harm"); *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006) (same); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) ("[t]he scheme to defraud need not have been successful or complete . . . [t]herefore the victims of the scheme need not have been injured").

Simply put, if the evidence establishes Defendants schemed to defraud counterparties by manipulating the LIBOR rate to their financial advantage, it is irrelevant whether counterparties were, in fact, disadvantaged.  Moreover, even if particularly counterparties were fully "hedged" against such losses (which is unlikely), downstream parties would have been impacted.  But expert testimony that Deutsche Bank's counterparties were "not . . . positioned to be harmed" or "may have net benefitted" from such submissions would wrongly suggest to the jury that the government must prove counterparties were *actually harmed*.  That is not the law.  Given the irrelevance of the testimony and strong likelihood the jury would be confused or misled, Defendants' proposed expert opinions as to the harm or benefit to Deutsche Bank's counterparties should be excluded under Federal Rules of Evidence 401 and 403.

Excluding this testimony is consistent with the Second Circuit's opinion in *United States v. Litvak*, in which it found expert testimony as to the "fair market value" and "profitability" of the trades at issue was properly excluded at trial.  808 F.3d 160, 185-86 (2d Cir. 2015) ("whether the price alleged victims paid was within a range of 'fairness' was not relevant to determining if the misstatements themselves were important to a reasonable investor or whether Litvak

5

intentionally deceived the counterparties' representatives").  While the Second Circuit found the expert should have been allowed to testify to the process by which victim investors evaluated securities, as such testimony went to the materiality of the misstatements, *id.* at 181, the expert testimony proposed by Defendants here—the net benefit or harm to counterparties—is analogous to the fair market value and profitability testimony properly excluded in *Litvak*.  To the extent the Court is inclined to permit any such testimony here, the government requests a limiting instruction, to be given concurrently with the testimony, making clear the jury should not consider it for harm or lack of harm to counterparties—which is not necessary to establish any essential element of the charged offenses.

III.     **Because Defendants Refuse to Disclose the Required Bases and Reasons for Their Experts' Opinions, the Proposed Testimony Should Be Excluded**

Under Federal Rule of Criminal Procedure 16(b)(1)(C), a defendant "must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 . . . ."  The written summary "must describe the witness's opinions, the *bases and reasons* for those opinions, and the witness's qualifications."  *Id.* (emphasis added).  The purpose of the rule is "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination," and "permit more complete pretrial preparation by the requesting party." Fed. R. Crim. P. 16, Adv. Comm. Notes, 1993 Am.

The bases and reasons for an expert's opinion, which the Advisory Committee Notes stress as the "most important" aspect of the disclosure, should include "not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other

6

experts." *Id.; United States v. Jasper*, 2003 WL 223212, at *3 (S.D.N.Y. Jan. 31, 2003) (Advisory Committee "emphasized that the most important aspect of this mutual discovery obligation is the provision of a summary of the bases of the expert's opinion"). Notably, the requirement to provide a summary of the bases and reasons for an expert's opinion apply regardless of whether the expert has prepared any formal written reports. *Jasper*, 2003 WL 223212 at *3; Fed. R. Crim. P. 16, Adv. Comm. Notes, 1993 Am.

When a defendant fails to provide the required summary of the bases for their expert's opinions, a court may exclude that expert's testimony. *See* Fed. R. Crim. P. 16 (d)(2)(C); *United States v. Concessi*, 38 Fed. Appx. 866, 868 (4th Cir. 2002) (court properly excluded defendants' expert testimony where disclosure "included only the general topics concerning which each proposed expert would testify" and failed to "provide the bases and reasons for the witnesses' opinions"); *United States v. Mahaffy*, 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007) (even if disclosure includes a "sufficient summary of any opinions to be offered," expert's testimony may be excluded if defendant makes no attempt to describe the bases and reasons for those opinions); *United States v. Wilson*, 493 F. Supp. 2d 484, 487 (E.D.N.Y. 2006) (excluding expert testimony where defendant failed to describe the bases and reasons for the expert's opinions). At the very least, a court should require defendants to supplement inadequate expert disclosures with sufficient time to allow the Court to perform its gatekeeping function and the government to prepare for cross-examination. *See* Fed. R. Crim. P. 16 (d)(2)(A); *Jasper*, 2003 WL 223212 at *3-5 (ordering defendant to provide written summary of proposed expert testimony, including bases and reasons for opinions).

Here, Defendants have listed a variety of opinions they intend their experts to offer that clearly must be based on assumptions and methodologies, but provided no bases and reasons.

This is particularly problematic given the vagueness and potential breadth of the opinions.  For example, Defendants intend to offer expert testimony from Mr. Evans that "his comprehensive review of all of the positions between particular counterparties and Deutsche Bank on Relevant Dates shows that counterparties may have net benefitted from the LIBOR setting on Relevant Dates," and conversely, from Dr. Arnold that "data provided by the Government does not establish that Deutsche Bank counterparties were positioned to be harmed by various of the Operative Submissions."  (ECF Nos. 287 at 3, 288 at 4.)[3]  These purported opinions raise a whole host of unanswered questions:  What did Mr. Evans do in his supposedly "comprehensive" review?  How are the experts defining (and assessing) "net" benefit and harm?  On what contracts and trading positions are their opinions based?  Those between counterparties and Deutsche Bank specifically, counterparties' trading books overall, or some subset thereof?  And for what time period—particular days, certain time ranges, or the full time period covered by the Superseding Indictment and government's summary exhibits?[4]

Dr. Arnold's proposed testimony that "Mr. Black's trading books were not positioned to have benefitted from various of the Operative Submissions" (ECF No. 288 at 4) raises similar queries.  What are the "various" submissions Dr. Arnold reviewed?  How did he analyze them?  What trading books did he consider—certain or all of Mr. Black's books, and/or those he shared with others at Deutsche Bank?  And what time period(s) did he look at?  Without further

_____

[3] The government's position is that testimony relating to benefit/harm to counterparties is incurably inappropriate, as explained in Section II.  However, in the event the Court holds otherwise, Defendants' refusal to comply with Rule 16(b)(1)(C) provides an additional basis to exclude the testimony.  The same is true for testimony relating to the adequacy of the government's discovery and whether a conspiracy has been established.

[4] By contrast, even where the government intends to display certain data through non-expert witnesses, the government has provided Defendants with the data it is planning to show at trial, including the dates and details regarding each LIBOR submission and counterparty trade.

disclosures by Defendants, the government and the Court are left to guess at the answers to these and many other questions raised by Defendants' proposed expert testimony.

The government thus requested from Defendants the missing bases and reasons required by Rule 16(b)(1)(C), including the bases and reasons for Mr. Evans' opinions that:

- "there was no consistency in terms of the size of the position held by the New York desk on the Relevant Dates compared with other dates in this period";

- "Deutsche Bank's submissions on Relevant Dates were not inconsistent with the general trend in Deutsche Bank's submissions throughout the Indictment period";

- "Deutsche Bank's submissions on Relevant Dates were supported by factors that demonstrated the reasonability of each submission on each date";

- "the change in Deutsche Bank's submissions on Relevant Dates is not generally out of line with the movements of other Panel banks"; and

- "counterparties may have net benefitted from the LIBOR setting on Relevant Dates." (ECF No. 287 at 2-3.)

The government also requested the calculations, data, and methodology underlying Mr. Evans' work in which he "calculated daily resets for the New York desk, the London desk and certain individual traders," and his "comprehensive review of all of the positions between particular counterparties and Deutsche Bank on Relevant Dates."  (*Id.*)

Similarly, for Dr. Arnold, the government requested the bases and reasons for his opinions that:

- "Deutsche Bank's USD LIBOR submissions as identified by the Government in the Superseding Indictment and the Government's Summary Exhibits 1-454, 1-455, and 1-456 . . . are economically reasonable";

- "[a]n analysis of the data produced by the Government, including Deutsche Bank's RMS and Kondor transactional data and its interbank lending data, is inconsistent with the Government's theory of alleged manipulation . . . ";

- "[t]he Government failed to provide discovery, including data that substantiates the alleged theory of manipulation";

9

- "[t]he totality of the trading positions held by Deutsche Bank traders and/or counterparties throughout the Relevant Time Period does not establish the alleged conspiracy";

- "Mr. Black's trading books were not positioned to have benefited from various of the Operative Submissions";

- "[t]he data provided by the Government does not establish that Deutsche Bank counterparties were positioned to be harmed by various of the Operative Submissions";

- "the alleged co-conspirators were inconsistently positioned on various of the Operative Submission dates"; and

- "[r]egardless of whether the Government contends that an alleged request was incorporated into an Operative Submission, the Operative Submissions are economically reasonable." (ECF No. 288 at 3-4.)

Despite the government's requests, both Defendants refuse to provide the missing bases and reasons—instead insisting they have no such obligation.[5] But without any indication of the bases or reasons for Mr. Evans' or Dr. Arnold's opinions, the Court will be unable to assess "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts at issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (district court must "make certain than an expert, whether

---

[5] While Defendant Connolly provided copies of four papers Mr. Evans wrote for NERA Economic Consulting, which are referenced in his *curriculum vitae*, those papers have nothing to do with this case and do not provide any bases or reasons for the opinions Mr. Evans seeks to offer here.

Additionally, Defendant Black contends his expert notices provide more detail than the government's notice for its expert, Dr. Youle. Unlike Defendants experts, however, Dr. Youle is not purporting to offer opinions as to the specific facts or issues of this case. Instead, he will provide background information regarding LIBOR, the process by which it is set, and the impact of LIBOR manipulation on the market generally to aid the jury in understanding other witnesses' testimony. The Court has already found his testimony to be proper. (Decision on Defendants' Motions in Limine, ECF No. 263 at 8-10.) And although Dr. Youle will be acting as a tutorial witness, the government has nevertheless provided Defendants with his multiple publications related to LIBOR and LIBOR manipulation.

basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). Nor will the government be able to adequately prepare for their cross-examination at trial.

As a result, the Court should preclude Mr. Evans and Dr. Arnold from testifying. Alternatively, the Court should direct Defendants to promptly provide the required "bases and reasons" for each of their experts' opinions, and thereafter allow the government an opportunity to challenge such opinions and their bases pursuant to *Daubert* and *Kumho Tire*.  The Court should also hold a *Daubert* hearing, if necessary after further disclosures, to allow the government to question Defendants' experts as to their reasoning and methodologies.[6]

### IV.    Expert Testimony Regarding "Economic Reasonability"/"Reasonable Range" and Whether Mr. Black's Position Stood to Benefit Are Problematic and Underscore the Need for Further Disclosures

Two areas of Defendants' proposed expert testimony in particular demonstrate the need for further disclosures:  opinions relating to the "economical reasonability" or "reasonable range" of LIBOR submissions, and testimony regarding Mr. Black's position to benefit from the fraud. Both areas of testimony are potentially improper, as they carry a high risk of misleading and confusing the jury regarding the elements of the charged offenses.  Should the Court permit Defendants to supplement their expert disclosures, the government will need to scrutinize the bases and reasons for these opinions, and it may then object to the testimony in its entirety or seek concurrent limiting instructions as needed.[7]

---

[6] If Defendants are not required to provide their experts' bases and methodologies in advance of a *Daubert* hearing, then the *Daubert* hearing will be a long and convoluted cross-examination where the government is asking each expert to walk them through their methodology, while the government tries to learn and understand difficult concepts on the spot. This is not only prejudicial to the government, but a waste of the Court's time.

[7] The government highlights these two areas of proposed expert testimony given their

### A.    Expert Testimony Regarding the "Economic Reasonability" of LIBOR Submissions Could Mislead the Jury by Incorrectly Suggesting They Must Find Submissions Were Unreasonable

Defendants intend for Dr. Arnold to testify that Deutsche Bank's USD LIBOR submissions identified in the Superseding Indictment and in the government's summary exhibits were "economically reasonable" (ECF No. 288 at 3-4), and for Mr. Evans to explain the submissions were "supported by factors that demonstrated the reasonability of each submission on each date" (ECF No. 287 at 3).  Similarly, Defendants intend for Mr. Rooke to explain that a panel bank submitter like Deutsche Bank would have "had the discretion to submit LIBOR within a reasonable range" (ECF No. 289 at 2).  Allowing such testimony unfettered could easily mislead the jury regarding the law that applies to the charged offenses, by suggesting LIBOR submissions must have been "unreasonable" to sustain a conviction.  That is not the law.

Statements that are arguably "reasonable" or fall within a "reasonable range" are not a complete defense to liability.  Indeed, in wire fraud cases, material statements made for the purpose of deceiving another party establish a scheme to defraud even where those statements, by luck or design, are factually defensible.  *United States v. Finazzo*, 850 F.3d 94, 111 (2d Cir. 2017) (misrepresentations can support a conviction if they "*can* or do result in tangible economic harm" and "[d]epriving a victim of 'potentially valuable' information *necessarily* creates a risk of tangible economic harm") (first emphasis added); *Binday*, 804 F.3d at 570-71 (wire fraud convictions upheld where the deceit "affected the victim's economic calculus or the benefits and burdens of the agreement" or "pertained to the quality of services bargained for").[8]

_____

clear risk of misleading and confusing the jury.  As noted above, the deficiencies in Defendants' disclosures make it difficult to identify all expert testimony that may be improper, and the government may seek to preclude additional testimony.

[8] Courts have likewise held in analogous contexts that criminal liability attaches to

12

Here, if the evidence shows Defendants schemed to defraud counterparties by manipulating LIBOR submissions, whether the rates submitted were "reasonable" or even an accurate reflection of Deutsche Bank's borrowing costs does not—standing alone—completely absolve Defendants.  But expert testimony that Deutsche Bank's submissions were "economically reasonable" or fell within a "reasonable range" would wrongly suggest to the jury that the government must prove Deutsche Bank made LIBOR submissions that were economically *unreasonable*.  Such testimony is similar to the expert testimony regarding the "fair market value" of trades that was excluded as irrelevant in *Litvak*.  808 F.3d at 185-86.  Further disclosure as to the bases and reasons for the proposed testimony would be needed to assess whether it could come in for any purpose, and if so, whether and what limiting instruction might be warranted.

   **B.**   **Expert Testimony that Mr. Black's Trading Books Were Not Positioned to Have Benefitted Could Mislead the Jury by Incorrectly Suggesting They Must Find Defendants Were Positioned to Benefit from the Fraud**

Finally, Defendant Black intends to offer Dr. Arnold's testimony that "Mr. Black's trading books were not positioned to have benefitted from various of the Operative Submissions"

---

conduct intended to deceive another party, even when the statements uttered are reasonable, defensible, or even truthful.  *See, e.g.*, *United States v. Manton*, 107 F.2d 834, 845-46 (2d Cir. 1939) (explaining, in the context of a former judge who accepted bribes, "the unlawfulness of the conspiracy here in question is in no degree dependent upon the indefensibility of the decisions which were rendered in consummating it."); *United States v. Md. & Va. Milk Producers Co-op. Ass'n, Inc.*, 1992 WL 224928, at *17 (4th Cir. Sept. 15, 1992) ("[I]t is no defense to illegal bid rigging when found that the prices, costs or profits were reasonable, unreasonable, high, low, fair, or unfair."); *United States v. Vest*, 116 F.3d 1179, 1182-83 (7th Cir. 1997) ("[I]f in hindsight it turns out that . . . the tests [defendant] ordered were medically necessary, that is merely a fortuitous coincidence.  It does not rebut the inference that [defendant] had a fraudulent intent when he ordered the tests with the data he had."); *United States v. Dula*, 39 F.3d 591, 592-93 (5th Cir. 1994) ("[W]hether or not the products actually conformed to these specifications is a matter of happenstance and is essentially irrelevant").

13

(ECF No. 288 at 4).  Putting aside the question of what "various" submissions Dr. Arnold is using, this testimony is also problematic because it would suggest to the jury that Mr. Black must have been positioned to benefit or have actually benefitted from the fraud.  This is contrary to well-established law that a scheme need not be successful, and a defendant need not benefit to be guilty of wire fraud.  *See United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006) ("to violate the [wire fraud] statute, the defendant need not have completed or succeeded in his scheme to defraud"); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) ("scheme to defraud need not have been successful or complete"); *United States v. Riley*, 621 F.3d 312, 332 (3d Cir. 2010) ("[t]o support a fraud conviction it is not necessary for the Government to demonstrate that the defendant personally benefitted from the scheme") (internal quotations omitted).

Again, Defendants would need to disclose the bases and reasons for the proposed testimony for the government, and the Court, to assess whether it could be relevant for some other, proper purpose and whether it should thus be admitted with a limiting instruction.  That instruction would need to direct the jury not to consider the testimony in terms of whether Mr. Black was or was not positioned to benefit from LIBOR submissions—which is not necessary to establish any essential element of the charged offenses.

**V.    Conclusion**

Defendants' proposed expert testimony as to the adequacy of the government's discovery, establishment of the conspiracy, and benefit or harm to Deutsche Bank's counterparties is incurably improper, and the Court should exclude it.  Moreover, given the deficiencies in Defendants' disclosures, all three of their experts should be barred from testifying.  At a minimum, the Court should require they provide the required "bases and reasons" for their opinions and thereafter allow the government an opportunity to challenge the

14

testimony under *Daubert* and *Kumho Tire*. To the extent the Court allows Defendants to remedy

their disclosures, the government may object to particular testimony or seek further limiting

instructions as appropriate, either before or during trial.

Respectfully submitted,

SANDRA MOSER                                        JAMES J. FREDRICKS
Acting Chief, Fraud Section                          Acting Chief, Washington Criminal II Section
Criminal Division                                          Antitrust Division
United States Department of Justice             United States Department of Justice


_____/s/_____                                   _____/s/_____
CAROL L. SIPPERLY                               MICHAEL T. KOENIG
Senior Litigation Counsel                           CHRISTINA J. BROWN
ALISON L. ANDERSON                            Trial Attorneys
Trial Attorney                                             Antitrust Division
Criminal Division, Fraud Section               United States Department of Justice
United States Department of Justice

15