

U.S. Department of Justice

Criminal Division

---

*Fraud Section*

*Christina J. Brown*
*(202) 598-8839*
*christina.brown@usdoj.gov*

*450 5th Street NW*
*Washington, D.C. 20530*

**VIA ECF** September 21, 2018

Honorable Colleen McMahon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    <u>United States v. Connolly and Black, 16-CR-370 (CM)</u>

Dear Chief Judge McMahon:

    We respectfully submit that testimony from representatives of Federal Home Loan Banks (FHLB), which executed swaps with Deutsche Bank, is relevant to the allegations made in the indictment and should be admitted. At the end of the trial day on September 20, defense counsel asserted that testimony from Deutsche Bank counterparties like FHLB could only be admitted if the particular trade at issue was executed by a member of the conspiracy, as opposed to a Deutsche Bank trader who was not participating in the scheme. As described below, we expect the government will lay a foundation, through its cooperating witnesses and other records, that the counterparties at issue transacted with Deutsche Bank traders who were part of the conspiracy or worked on the trading desk Defendant Connolly supervised.

    Even without that foundation, testimony from counterparties who executed swap trades with Deutsche Bank traders who were not members of the conspiracy is nonetheless relevant. Such counterparty witnesses should thus be permitted to testify at trial even absent this foundation or before this foundation is laid. This is because materiality for purposes of the wire fraud statute has an objective component, which looks to what a reasonable market participant would consider to be important. Evidence that institutions that traded swaps with Deutsche Bank—even those institutions that may have transacted with Deutsche Bank traders who did not participate in the conspiracy—considered LIBOR manipulation to be important tends to show a reasonable market participant would draw the same conclusion. We regret burdening the Court with an additional written submission, but do so to explain the foundation we expect to lay for the counterparty testimony and provide citations to relevant case law.

1.  The government's witnesses can lay the proper evidentiary foundation.

George Maroun, FHLB Boston: Mr. Maroun will testify in connection with FHLB Boston swap contract GX 1-514 (*see also* GX 1-627), which was entered on May 2, 2006 and reset on May 18, 2006, and was associated with the NYMMDFRA trading book. The government expects cooperating witness Timothy Parietti to testify that unindicted co-conspirator A.S. (referenced in the indictment as Trader 6) managed Deutsche Bank's NYMMDFRA book during this period. Defendant Connolly also supervised A.S. at this time.

Because we plan to call Mr. Maroun before Mr. Parietti, we also plan to offer GX 1-407, a business record showing A.S. was the trader associated with the relevant trade in the NYMMDFRA trading book. Additionally, we expect to offer GX 1-040 and 1-041 through James King, which will establish that on May 17, 2006, A.S. was the co-conspirator who requested a high 3 month LIBOR, which Mr. King accommodated.[1]

Cindy Konich, FHLB Indianapolis: Ms. Konich will testify in connection with FHLB Indianapolis swap contract GX 1-513, which is also associated with NYMMDFRA. This trade was entered on April 7, 2006 and reset on April 12, 2006. We expect Mr. Parietti's testimony will establish that NYMMDFRA was A.S.'s trading book, as described above, and that Mr. Parietti checked in with A.S when making requests to manipulate LIBOR submissions.

Annette Hunter, FHLB Atlanta: Ms. Hunter will testify in connection with FHLB Atlanta swap contract GX 1-544, which was entered on June 29, 2006 and reset on September 27, 2006. It too was associated with A.S.'s NYMMDFRA trading book, as the testimony described above will establish.

Ms. Hunter will also testify in connection with FHLB Atlanta swap contract GX 1-545, which was entered on December 13, 2007 and reset on December 14, 2007. This trade is associated with trading book NYMMDPRIME. We expect Mr. Parietti to testify that NYMMDPRIME was managed by D.P., another unindicted co-conspirator, in December 2007, and that D.P. was also supervised by Defendant Connolly. We also expect to offer business records GX 1-049 and GX 1-210 to establish D.P.'s role in the conspiracy. Specifically, D.P. told Mr. King that "we always need higher LIBORS" (GX 1-049) and "as long as 3s are higher than 1s and 6s are higher than 3s, I'm fine with any level in LIBOR" (GX 1-210) (commenting on the need for LIBOR relating to basis swap strategies).

---

[1] In addition to Mr. Parietti's testimony, and prior to it, the government anticipates introducing GX 1-456 through its next witness, Guy Weston-Edwards. We plan to add entries to the current version of the exhibit to show the trader information for each of the specific trades associated with the testifying FHLB witnesses. Each of these specific trades has the corresponding trader's name populated in Deutsche Bank's trading data—unlike many of the trades in Deutsche Bank's data that do not actually list an associated trader. Thus, the government's position is that it will be able to call Mr. Maroun of FHLB Boston immediately following Mr. Weston-Edwards.

      2. <u>Even absent this foundation, testimony from *any* Deutsche Bank counterparty that had an interest in LIBOR when co-conspirators manipulated the rate (even a counterparty who did not transact directly with a member of the conspiracy) that they considered LIBOR manipulation to be material is admissible because it tends to show a reasonable market participant would draw the same conclusion, which is the standard for materiality in the Second Circuit.</u>

At the outset, we wish to make clear the government does not allege that every swaps trader at Deutsche Bank participated in the scheme alleged in the indictment. Rather, our position is that testimony from institutions that traded swaps against Deutsche Bank traders who did not necessarily participate in the conspiracy is probative of materiality.

The Second Circuit has long recognized that the materiality element has an objective aspect which approaches the importance of the false statement from the perspective of "a person of ordinary prudence." *See, e.g., United States v. Thomas*, 377 F.3d 232, 242-43 (2d Cir. 2004) (assessing materiality from the perspective of a person of "ordinary prudence and comprehension"). Applying an objective "reasonable investor" standard, the Second Circuit in *United States v. Litvak* concluded that the district court erred in excluding expert testimony of what a reasonable market participant would have considered important when making a decision to buy bonds. 808 F.3d 160, 184-85 (2d Cir. 2015). *Litvak*, therefore, stands for the proposition that a party can challenge or establish materiality through testimony about what reasonable market participants would have considered important, not just those market participants who participated in a transaction directly with the defendant. Applying the Second Circuit's "person of ordinary prudence" standard, evidence that an FHLB representative considered LIBOR manipulation important to the decision about whether to do a swap transaction tends to show that a generic "person of ordinary prudence" would come to the same conclusion. This is so regardless of whether the swaps in which that person participated involved one of the defendants in this case or some other Deutsche Bank trader.

It should be noted that the testimony the government seeks to offer is coming from entities that had a stake in LIBOR on days the defendants manipulated the rate, *not* random market participants. The government's counterparty witnesses executed swaps with Deutsche Bank that reset on the same day that one of the co-conspirators schemed to manipulate LIBOR and are in the same currency and borrowing duration as the manipulation at issue. These similarities show the government's counterparties are fairly representative of a very specific market and were not picked at random in an unfairly prejudicial way. Indeed, because these counterparties had an interest in the very LIBORs the co-conspirators manipulated, they had the potential to be financially impacted by the scheme.

The Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar* ("*Escobar*") does not prohibit the government from offering testimony from representatives of Federal Home Loan Banks—even those banks that executed swaps with traders who were not necessarily part of the conspiracy. 136 S.Ct. 1989, 2002 (2016). At the outset, *Escobar* was a civil False Claims Act case, and it is far from clear the decision has any application to a criminal wire fraud trial. *See United States v. Raza*, 876 F.3d 604, 620 (4th Cir.

2017) ("to the extent [*Escobar*] altered the concept of materiality in fraud proceedings, it is not likely that its impact extends beyond the context of qui tam actions").

Moreover, *Escobar* did not upend decades of Second Circuit precedent, but instead preserved the notion that evidence establishing a reasonable person would have considered the scheme important is relevant to materiality. *See United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017) ("we do not believe the Supreme Court intended to broadly 'overrule' materiality standards that had previously applied in the context of criminal fraud"). Indeed, *Escobar* references the "reasonable person" standard several times, 136 S.Ct. at 2001-03, and subsequent Second Circuit cases have continued to apply that standard. *See, e.g.*, *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (a "lie can support a fraud conviction only if is material, that is, if it would affect a reasonable person's evaluation of a proposal"). For these reasons, *Escobar* did not fundamentally alter the standard by which the Second Circuit has traditionally assessed materiality and does not prohibit the government from offering evidence from Deutsche Bank counterparties who had a financial interest in a particular LIBOR, but who happened to transact with a Deutsche Bank trader who did not participate in the scheme.

            Sincerely,

            _____/s/_____
            CAROL L. SIPPERLY
            Senior Litigation Counsel
            ALISON L. ANDERSON
            Trial Attorney
            Criminal Division—Fraud Section
            United States Department of Justice

            MICHAEL T. KOENIG
            CHRISTINA J. BROWN
            Trial Attorneys
            Antitrust Division
            United States Department of Justice