UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA,

        -against-

MATTHEW CONNOLLY and
GAVIN CAMPBELL BLACK,

        Defendants.

------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/26/18
```

16 cr 370 (CM)

## RESPONSE TO RECENT SUBMISSIONS BY THE PARTIES

McMahon, J.:

    The court, for its response to this morning's submissions (ECF Documents 316 and 317) from the parties concerning matters relating to materiality and book-to-trader mapping:

    With respect to the wire fraud and conspiracy to commit wire fraud charges that are indicted in this case, the Government must prove that DB's LIBOR submissions (with respect to Count One, the conspiracy count) and the particular charged misrepresentations (the submissions connected to specifically charged wire frauds with respect to Counts Two through Eleven) were objectively material, in that they were *capable* of influencing a decision by the person to whom the representations were made. The Government does not need to prove that the misrepresentations *actually* influenced a decision, only that it was capable of doing so.

    Please note that this does not eliminate the aspect of materiality that requires that materiality be assessed with regard to the person who receives the misrepresentation. Nothing in *Neder*, or *United Health*, or *Raza* (the Government's post-*United Health* Fourth Circuit case) or *Lindsay* (the corresponding post-*United Health* Ninth Circuit case) suggests that materiality is to be judged without regard to whether the statement was capable of influencing some decision by the recipient of the fraudulent representation.

    However, because materiality in connection with criminally fraudulent schemes against private actors (as opposed to the Government) does not require proof of either reliance or damage, all the Government needs to show in order to obtain a conviction is that the charged misrepresentation is objectively capable of influencing a decision by the recipient of that misrepresentation.

    So far, the Government has introduced evidence tending to show that the DB LIBOR submissions were *objectively capable* of influencing the setting on LIBOR by the BBA on any

given day, simply because of the way the LIBOR formula works. The BBA (via Thompson-Reuters, its agent) was the recipient of the submissions; it was the entity to which the alleged misrepresentations were addressed. Adding those two things together gets the Government to the jury on the issue of materiality, whether we are talking about the conspiracy count (Count One) or the specific wire fraud counts (Counts Two through Eleven).[1] Whether the DB submissions were in fact false is another matter altogether.

If the Government is still arguing a non-convergent fraud theory – if it is arguing that the plan was to defraud the BBA into setting LIBOR favorably to the defendants' trading positions, with the idea that the DB traders would benefit at the expense of their counterparties, who are the victims, but not the recipients of the false statements) – then the Government simply proves its case by offering evidence that (1) the submissions to the BBA were both not true and capable of influencing the day's LIBOR setting; (2) the higher or lower setting that was requested would impact whether particular trades by DB traders were or were not successful; and (3) the concept was that the conspirators at DB would see their books benefit at the expense of their trading counterparties. With respect to Counts Two through Ten, it is my understanding that the Government intends to introduce evidence that the trades with one particular counterparty, the Federal Home Loan Bank(s), somehow relate to books of business maintained or supervised by defendants Connolly and/or Black. With respect to Count One, as I understand the law of conspiracy, the evidence need only show that the submissions could have had some impact on trades that involved any of the co-conspirators -- not necessarily the defendants – which requires the Government to prove the identity of the relevant co-conspirators.

The court has never opined whether book-to-trader mapping was a necessary part of this case. But the parties have been quite consistent in their divergent approaches to the subject.

From at least as early as May 14, 2017 (Levine letter of September 24, 2018 at Ex. A), if not earlier, the Government has insisted that it was not required to prove its case by mapping trades. Indeed, the Government has never wavered from the position articulated in that letter, where it said that, "trading data is not the crux of [our] case" (Ex. A at 2). Contrary to the implication in Mr. Levine's most recent letter, the Government has never committed to present book-to-trader mapping as part of its case; it said only that Defendants could point out flaws in the government's methodology "to the extent [the Government] intended to rely on this book-to-trader mapping analysis at trial." It is defendants who have insisted, from the first day they came into this court, that it would be impossible for them to defend against the Government's case without fully analyzing the massive amount of trading data that was produced by the Government – including being able to map trades back to particular traders' books.

The court (which for a very long time thought this case was much more complicated than it has ultimately proved to be) gave the defendants plenty of time to do whatever they wanted

---

[1] Obviously, a much broader range of submissions is relevant in connection with the conspiracy count than in connection with Counts Two through Eleven, which relate only to the specific DB LIBOR submissions that relate to the allegedly fraudulent wire transmissions that are the subject of those counts, and that are specifically alleged in those counts.

(including performing book-to-trading mapping analysis) with the DB trading data that was produced to it. I reject the defense contention that due process rights have been violated because the Government now insists that book-to-trading mapping is inaccurate; it is sophistry to say that defendants have had insufficient time to manipulate the trading data to make whatever points it wishes to make.

As things presently stand, it appears to me that the conspiracy charged in this case can be proved without regard to any book-to-trader mapping. Success of a conspiracy is not an element of the crime charged, and mapping is not needed to prove that the co-conspirators intended to try to manipulate LIBOR for their advantage.

With regard to the specific instances of wire fraud that are charged in Counts Two through Eleven, the Government's inability to demonstrate that the charged defendant stood to profit from a particular charged false submission would of course open the door to a defense argument that the defendant had no motive to falsify (or to cause the submitter to falsify) the relevant submission to the BBA.

The defense is perfectly free to introduce opinion evidence that is based on evidence of book-to-trader mapping. The expert is free to advise the jury that what the expert is relying on is something that was prepared by Deutsche Bank. The Government can try to attack the expert's methodology and his sources on cross, but the court will not preclude the expert testimony on the ground that the Government considers the defendants' source material (which apparently comes from DB) to be unreliable.

The Government advises the court that it can lay a foundation that the trades with the FHL Banks are in fact connected to the defendants, in one way or another (either directly to their books or to books of other co-conspirators who were supervised by defendants). I have directed the Government to lay a foundation by putting on this evidence before the FHLB witnesses testify. I adhere to that ruling. The defense is free to attack this using its book-to-trader mapping evidence, cross examination concerning Mr. Parietti's recently recovered memory, and any other legitimate trial technique. Assuming the Government lays the foundation it tells me it is capable of laying, the FHL Bank witnesses can testify, and can testify about anything that might be relevant to the issue of what an objective counterparty would have done had it known that a particular day's submission was false.

Dated: September 24, 2018

_____
Chief Judge

BY HAND TO ALL COUNSEL