

U.S. Department of Justice

Criminal Division

---

*Fraud Section*                                    *Christina J. Brown*
                                                    *(202) 598-8839*
                                                    *christina.brown@usdoj.gov*
                                                    *450 5th Street NW*
                                                    *Washington, D.C. 20530*

**VIA ECF**                                         October 11, 2018

Honorable Colleen McMahon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    <u>United States v. Connolly and Black, 16-CR-370 (CM)</u>

Dear Chief Judge McMahon:

      The government respectfully requests the following additions and modifications to certain of the Court's draft jury charges circulated to the parties on October 10, 2018.[1]

      **Wire Fraud - First Element:** *False and Fraudulent Representation or Statement* **(page 28):**  The Court previously indicated how it intended to charge the jury on falsity in its Decision on Government's Motions *in Limine*:

> The court will give jury instructions about falsity that conform to Supreme Court precedent and the law in this Circuit – both of which make it clear that a statement is false and fraudulent for purposes of the wire fraud statute if it is actually false, impliedly false, or misleadingly half-true.

ECF No. 262 at 20-21 (citing *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016) ("A statement that misleadingly omits critical facts is a misrepresentation irrespective of whether the other party has expressly signaled the importance of the qualifying information.") and *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) ("The fraud statutes are violated by affirmative misrepresentations or by omissions of material information that the defendant has a duty to disclose . . . [I]t is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.").)

      In line with this guidance, the government requests the following addition to the draft charge, to incorporate implied and misleading falsity and half-truths:

---

[1] The government will raise other requested changes at the charge conference, but files this letter to address its most significant requests.

> "False" means "not true."  An affirmative representation is false if it is not true.  ***A statement is false and fraudulent for purposes of the wire fraud statute if it is actually false, impliedly false, or misleadingly half-true.  It is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.***  The failure to disclose information may also be a false representation or statement, but only if the defendant was under a duty to make such disclosure.

As noted above, the first of these additional sentences is from the Court's motions *in limine* decision and based on *Universal Health*, while the second tracks the Second Circuit's language in *Autuori*.  The government requests they be included to accurately instruct jurors on the scope of "falsity."

**Wire Fraud - First Element: *Intent to Deceive* (page 30):**  The government requests that the jury charge on intent incorporate the concept that a defendant can intend the unlawful purpose in whole *or in part*, by adding the following language:

> "Intent" means "conscious aim or objective."  Someone "intends" a particular result when he commits conduct with the purpose*, **at least in part,*** of bringing about that result.

This is consistent with Second Circuit law as well as the instructions given in *United States v. Allen*, 14-cr-272-JSR (S.D.N.Y. 2015), ECF No. 178, Tr. Trans. at 1634:6-12 ("To act with a specific intent to defraud goes further and requires that the defendant you are considering intended, at least in part, to deceive . . .").  *See United States v. Technodyne, LLC*, 753 F.3d 368, 385 (2d Cir. 2014) ("the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary purpose . . .  a defendant accused of [a specific intent] crime may properly be convicted if his intent to commit the crime was one of his objectives") (citing *Spies v. United States*, 317 U.S. 492, 499 (1943) ("if the tax-evasion motive plays *any part* in [the defendant's] conduct the offense may be made out even though the conduct may also serve other purposes . . . .") and *United States v. Biaggi*, 909 F.2d 662, 683 (2d Cir. 1990) ("[a] valid purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability")).

**Wire Fraud - First Element: *Deprive Person of Money or Property* (page 31):**  In line with the Second Circuit's recent guidance on "right to control" charges in *United States v. Finazzo*, 850 F.3d 94, 108-111 (2d Cir. 2017), which emphasized that "misrepresentations or non-disclosure of information cannot support a conviction under the 'right to control' theory unless those misrepresentations or non-disclosures can or do result in tangible economic harm," the government requests the following addition to the draft charge:

> Obviously a person is deprived of money or property when someone else takes his money or property away from him.  A person can also be deprived of money or property when he is deprived of the ability to make an informed economic decision about what to do with his money or property.  We refer to that as being

> deprived of the right to control money or property.  ***This interest is injured when a victim is deprived of potentially valuable economic information it would consider valuable in deciding how to use its assets.***

See *Finazzo*, 850 F.3d at 108 (approving jury instruction with this language).

**Wire Fraud (Counts 2, 3, 8, 9, 10 & 11): Element Two (Participation with Intent to Defraud) (page 32):**  The government requests the jury charge on "willfully" incorporate the following language:

> "Willfully" means to act both knowingly, as I have just defined that term, and with a bad purpose, which is to say, with an intent to do something that the law forbids, by disobeying or disregarding the law.  ***The defendant must have an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or disregard the law.  He need not, however, have been aware of a specific law or rule that his conduct may have violated.***

This is consistent with Second Circuit law, which does not require a defendant intend to violate a particular law or rule.  *See, e.g.*, *United States v. Porcelli*, 865 F.2d 1352, 1358 (2d Cir. 1989) (mail fraud statue does not require an "intent to violate a statute").

**Wire Fraud (Counts 2, 3, 8, 9, 10 & 11): Element Three (Use of Interstate or Int'l. Wires) (page 36):**  For the jury's reference, and as they will not be receiving a copy of the indictment itself, the government requests the written jury charge include the table of wire communications applicable to the remaining wire fraud counts from the Superseding Indictment, ECF No. 22 ¶ 51:

The specific wire communication alleged in each count, the origin and destination of each such communication, and the defendant to which that particular count relates, are set forth in the following table:

| Count | Defendant | Approximate Date | Wire Transmission | Description |
|---|---|---|---|---|
| 2 | CONNOLLY | August 15, 2007 | International electronic signal between New York, New York and London, United Kingdom | CONNOLLY and Submitter A discussed via electronic message the manipulation of Deutsche Bank's USD LIBOR submission |

Case 1:16-cr-00370-CM   Document 336   Filed 10/11/18   Page 4 of 7

4

| 3 | CONNOLLY | August 16, 2007 | International electronic signal between New York, New York and London, United Kingdom | CONNOLLY and Submitter A discussed via electronic message the manipulation of Deutsche Bank's USD LIBOR submission. |
| 8 | CONNOLLY | July 20, 2006 | International electronic signal and transfer of data from London, United Kingdom to New York, New York | The rates submitted by Deutsche Bank and the other Contributor Panel banks and the averaged rates – or LIBORs – were published via international wire |
| 9 | CONNOLLY | August 13, 2007 | International electronic signal and transfer of data from London, United Kingdom to New York, New York | The rates submitted by Deutsche Bank and the other Contributor Panel banks and the averaged rates – or LIBORs – were published via international wire |
| 10 | CONNOLLY | September 27, 2007 | International electronic signal and transfer of data from London, United Kingdom to New York, New York | The rates submitted by Deutsche Bank and the other Contributor Panel banks and the averaged rates – or LIBORs – were published via international wire |
| 11 | BLACK | May 15, 2008 | International electronic signal and transfer of data from London, United Kingdom to New York, New York | The rates submitted by Deutsche Bank and the other Contributor Panel banks and the averaged rates – or LIBORs – were published via international wire |

**Wire Fraud (Counts 2, 3, 8, 9, 10 & 11): Fourth Element (Effect on Financial Institution) (page 37):** The government requests the definition of "financial institution" include a foreign bank with a U.S. branch at which deposits are received, in line with the U.S. Code sections pertaining to financial institutions:

> A financial institution includes (1) any bank insured by the Federal Deposit Insurance Corporation (FDIC), (2) any bank that is a Federal Home Loan Bank (FHLB), or (3) any company that has control over any FDIC-insured bank. A company has "control" over an insured bank if it (a) has the power to vote 25 percent of any class of voting securities, or if it (b) controls in any manner the directors or trustees of the bank, or it if (c) directly or indirectly exercises a

>controlling influence over the management or policies of the bank.  ***A financial institution also includes a foreign bank that has a branch located in the United States at which deposits are received.***

*See* 18 U.S.C. 20(9) ("a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978"); *see also* International Banking Act of 1978, Section 1(b)(3) ("(3) 'branch' means any office or any place of business of a foreign bank located in any State of the United States at which deposits are received").  Carol Saracco, managing director at Deutsche Bank, testified that Deutsche Bank AG takes corporate deposits in the United States, in its New York branch.  (Prelim. Tr. 2229:1-8.)

>**Conspiracy to Commit Wire Fraud and Bank Fraud (Count 1): Object of Conspiracy (page 44):**  Under 18 USC § 3293, the offense (the conspiracy) must affect a financial institution.  This requirement should thus be separated out from the other elements of wire fraud with respect to the conspiracy charge, and the jury instructed they must find the conspiracy affected a financial institution:

>>I have already explained the law regarding wire fraud.  So in deciding whether the defendants conspired—agreed—to violate the law of wire fraud, you should consider my instructions on wire fraud, and decide whether the Government had proved beyond a reasonable doubt that the defendants, considered individually, agreed with some other person or persons to commit the crime with all of the elements of wire fraud.  ***You must also find the conspiracy affected a financial institution.***

Given the potential for jury confusion, it may be better to refer to the effect on a financial institution in the wire fraud section not as a "fourth element," but rather a stand-alone requirement.

>Additionally, the bank fraud statute refers to defrauding a "financial institution" broadly, rather than specifically an FDIC-insured bank.  18 U.S.C. § 1344 ("Whoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution …").  The charge regarding bank fraud should thus track this same language, referring to the intended victim of the fraud being a financial institution:

>>Instead, the third element of bank fraud that the Government must prove beyond a reasonable doubt is that the intended victim of the fraud must be a *financial institution*.

>Thus, both the FDIC-insured banks, as well as the Federal Home Loan Banks, qualify as financial institutions for the purposes of bank fraud.

**<u>Various Limiting Instructions—End of Defendant Connolly's Employment at Deutsche Bank (page 48)</u>:** The government objects to the draft charge regarding Defendant Connolly's leaving Deutsche Bank:

> Second, as I have told you several times, there came a point when Matthew Connolly left DB. The Government does not contend that he continued as a member of the alleged conspiracy from and after the point when he left DB. The Indictment sets that date as in or [about] March 2008. Any evidence of conduct that took place after that date is not admissible as against Mr. Connolly and may not be considered by you in any way as you deliberate on the charges against him.

For the record, it is the government's continued position, as it was when it filed its response to Defendant Connolly's motion *in limine* (*see* ECF No. 250), that Connolly never withdrew from or otherwise ceased to be a member of the conspiracy when he left Deutsche Bank.

> Mere cessation of the conspiratorial activity by the defendant is not sufficient to prove withdrawal. *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008); *United States v. Flaharty*, 295 F.3d 182, 192 (2d Cir. 2002). The defendant "must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *Eppolito*, 543 F.3d at 49 (citations and internal quotation marks omitted). "Unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators." *United States v. Diaz*, 176 F.3d 52, 98 (2d Cir.1999) (quoting *United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir.1995)).

*United States v. Leslie*, 658 F.3d 140, 143 (2d Cir. 2011). The government agrees Defendant Connolly left Deutsche Bank sometime in 2008, but does not believe an instruction akin to withdrawal is appropriate. It nevertheless understands the Court will advise the jury as such. At a minimum, however, the charge should be revised to read:

> ***Except if they are Mr. Connolly's own statements,*** any evidence of conduct that took place after that date is not admissible as against Mr. Connolly and may not be considered by you in any way as you deliberate on the charges against him.

Otherwise, the jury will be confused as to whether it can consider the April 17, 2008 audio recording in which Defendant Connolly discussed LIBOR submissions: "Nobody has a fucking clue what the definition is, where it should be. It's just they all, you know, talk around, 'Where's it going to be? Where's it going to be?' And then everyone just sets it pretty close to where it's going to be. . . . And people fuck around with it on their positions." (GX 1-133TE at 6.)

Defendant Connolly's own statements go to his state of mind and understanding, and they are thus relevant regardless of whether he was employed by Deutsche Bank at the time he said them or not. This is evident from a conversation he had with cooperator Tim Parietti years after

he left the bank.  As Mr. Parietti explained, "What he said was, 'I'm sorry you're stuck dealing with all these questions in the LIBOR investigation and just tell them what happened, you know, what it is.  At least we were only telling them our positions, and I'm sure London will have a much bigger problem.'. . .  My takeaway from the conversation?  Was we can continue to minimize the behavior and explain it away, and we should be able to get away with it because somebody else did something worse." (Prelim. Tr. 1359:23-1360:16.)  The charge should, at a minimum, be revised to allow the jury to consider Defendant Connolly's own statements after March 2008.

Respectfully submitted,

| /s/ | /s/ |
|---|---|
| CAROL L. SIPPERLY | MICHAEL T. KOENIG |
| Senior Litigation Counsel | CHRISTINA J. BROWN |
| ALISON L. ANDERSON | Trial Attorneys |
| Trial Attorney | Antitrust Division |
| Criminal Division, Fraud Section | United States Department of Justice |
| United States Department of Justice | |